FOUNTAIN GREEN CITY v. NATIONAL
SURETY CORPORATION

No. 6272. Decided March 21, 1941. (111 P. 2d 155.)

A. W. *Jensen* and *Udell R. Jensen,* both of Ephraim, for appellant.

*Arthur E. Moreton,* of Salt Lake City, for respondent.

PRATT, Justice.

This is an appeal by Fountain Green City. A general demurrer was sustained to their second amended complaint. They stood upon that complaint. The lower court dismissed the case.

Their complaint is in two counts. The first charges the National Surety Corporation with liability as a bondsman for the city water superintendent, alleging his failure to properly perform his duties as such superintendent; the second charges the Surety Corporation with liability for money collected as water assessments from the city water users, by said superintendent, and for which he did not account and pay over the money to Fountain Green City. The Surety Corporation demurred to each count generally. These demurrers were sustained and resulted in the dismissal referred to above.

The Surety Corporation contends that there is no causal connection shown in the first count between the alleged failures of the superintendent and the losses supposed to have been suffered thereby. As to the second count, they contend that it was not one of the superintendent's duties to collect the assessments; therefore any losses so sustained were not within the liability incident to the terms of the bond. These issues will be developed later. First we must consider a motion to dismiss the appeal made by the Surety Corporation and based on an alleged failure to file assignments of error within 15 days after the date of filing the transcript of appeal in this court.

Rule VI of the Rules of Practice in this court provides:

"The appellant shall assign errors in writing subscribed by himself or his counsel, and shall serve a copy thereof on the respondent or his counsel, and file the original with the Clerk of this Court within fifteen days from the filing of the transcript of the record on appeal. The respondent may cross-assign errors in writing and serve a copy thereof on the appellant or his counsel and file the original with Clerk of this Court within ten days from the service of the appellant's assignments."

In this case the assignments were served before the transcript was filed in this court, but were filed in this court the same day that the transcript was filed here. We think that was sufficient compliance with the rule. We

do not approve of a service of the assignments while the case is on file in the lower court, as there is danger of a conflict arising out of such a service and the time fixed for the service and filing in this court of cross-assignments of error by respondent—an early service of the former might embarrass respondent in his effort to file in this court cross-assignments before the transcript had actually been filed here. But the grounds of the present motion for dismissal—a failure to file the assignments of error within 15 days after the filing of the transcript are not well taken. The motion for dismissal is denied.

Ray Livingston was the water superintendent of Fountain Green City. He was also city marshal. An ordinance of the city required that he furnish a $750 bond for the faithful performance of his duties as marshal. Another ordinance required that he file a $1,000 bond for the faithful performance of his duties as water superintendent. The National Surety Corporation became his bondsman in the sum of $1,750 for the faithful performance of the duties of his office as "City Marshal and Water Superintendent as required by law." There is nothing in the bond segregating the liabilitiy as between the two offices; that is to say, there are no statements in the terms of the bond indicating that $750 of the bond is a protection against unfaithful performances of his duties as marshal and $1,000 is a protection against unfaithful performance of his duties as water superintendent. Thus, be the loss from either source or both sources if there be a loss, the maximum penalty of the bond is $1,750.

Such was the rule laid down by the court in the case of *Bamberg County* v. *Maryland Casualty Co. et al.*, 173 S. C. 106, 174 S. E. 917, 918, which stated it in these words:

"While the statute required the auditor to furnish a bond for $2,000 only, it is my judgment that he and his surety could lawfully by contract, increase the amount of the county's security by voluntarily executing a bond in a larger sum, and when they chose to execute a bond for $3,000, conditioned for the proper discharge of Rowell's duties. as auditor and superintendent of education, it is my opinion

that the county was secured as to either and both offices in that sum. That is, if there were no liability as auditor, the county would be protected to the amount of $3,000, against his defalcations as superintendent of education; if there were no liability as to the latter, the county would be protected against his defalcations or derelictions of duty, as auditor, to the extent of $3,000; if there were defalcations in both offices aggregating $3,000, the county would be protected to that extent. In other words, the amount of the bond, $3,000, is not divisible in such a way as to restrict his liability to $2,000 as auditor and to $1,000 as superintendent of education; or to $1,500 as to the former, and $1,500 as to the latter."

The derelictions set out in the complaint in the case before us have reference to his duties as water superintendent. Any allegations as to his duties as marshal are surplusage and immaterial.

By ordinance the water superintendent was required to perform certain duties. Among them were these: (1) Measure the use of water through meters; (2) read the meters; (3) compute charges or assessments monthly; (4 notify users of these charges; (5) report readings and charges each month to the city treasurer; (6) shut off water in cases of delinquency in assessment payments; and—this next is in dispute—(7) collect charges or assessments.

The first count alleges a failure to perform these duties except the last—upon which it is uncertain—and claims a loss by reason thereof in the sum of $2,066.43. The count is ambiguous. One cannot tell whether the loss occurred as a result of money collected and not accounted for, or the failure to perform the duties above numbered 1 to 6, inclusive. It is alleged that the superintendent knew that the water users had not paid their assessments, and that the money had not been paid to the city treasurer "but that he himself had received and retained it to his own use, and that so knowing, in violation of his duty as water superintendent, he failed to turn off the water from the users of the water * * *." If the water users did pay that money to him, then their assessments were paid and there would

be no necessity for turning off the water—at least this would be true under the city's theory of the case. The city can hardly claim that it was the superintendent's duty to collect the money and then claim that money paid to him was not paid to him as agent of the city, and therefore if he kept it, the city suffered a loss by reason of the failure of the citizens to pay; which loss they attribute to a failure of the superintendent to perform other duties. Furthermore, it does not appear that had he performed those other duties there was any assurance that those assessments would have been paid by the water users. The fact that he gave bond cannot be used as a guaranty that all assessments would be paid when he sought to collect them. It seems unquestionable that the first count is so inconsistent and so ambiguous as to not state a cause of action. The lower court's ruling thereon was proper.

The important issue of this case arises over the second count. The duties of the water superintendent are set out in an ordinance passed in 1914. The pertinent allegations of the complaint upon this subject are these:

"* * * that by said ordinance after making the assessment said water superintendent shall collect the amount due the city from the respective water users and deliver said money so collected to the treasurer of Fountain Green City at the City Hall on the first Tuesday after the second Monday of each month thereafter together with his records aforesaid or to collect and remit as the city council may direct.

"That the ordinance aforesaid empowered the city council to direct the manner of collection and time of collection of said water assessments in accordance with the ordinance; that on May 2, 1936, the city council of the plaintiff * * * further directed him to collect all the tap rent then due and to become due Fountain Green City during the time of holding the position of superintendent of waterworks."

Attached to the complaint and made a part thereof is an ordinance passed in 1935 which is entitled: ■

"Ordinance No. Five. An Ordinance Establishing Rates to be Charged Water Users of Fountain Green City, Sanpete County, Utah, and to Repeal All Ordinances and Parts of Ordinances in Conflict

Herewith and Fixing the Time Such Ordinances Shall Become Effective,"

and which contains this provision:

"\* \* \* The payment for water used each month shall be made on the first Tuesday after the second Monday of each month at the City Hall to the Treasurer of Fountain Green City who shall give a receipt for each payment \* \* \*."

Does this latter ordinance by implication repeal the provision of the former requiring collection by the water superintendent? We think not. There is nothing inconsistent between the responsibility of the city treasurer to receive and receipt for assessments and the duty of an employee of the city to try and collect those charges. Even were it held that the treasurer could be held upon his bond for this money, it does not follow that the city may not impose upon one of its employees the duty of collecting money due the city, and require of him a bond for the faithful performance of that duty. Section 15-8-78 and 15-8-79, R. S. U. 1933. The bond in this case was entered into after the passage of the last ordinance. No contention is made, nor can be made under such circumstances, that the city has in any way tried to change the liability of the bond by the enactment of the ordinance of 1935. As to whether or not a water user or the city treasurer may have an objection to the power given the water superintendent is not an issue in these pleadings. The action of the city in giving him the duty of a collector is not void on its face.

It is our opinion that the money collected—if collected as alleged—was collected in the course of the superintendent's duties, and falls under the duties required by the ordinance and is a subject of his faithful performance under the terms of the bond. There is nothing in Chapter 6 or Chapter 7, Title 15, of the Revised Statutes of Utah 1933, that militates against this, to the benefit of the bonding company.

The judgment of dismissal as to the second count is reversed and the case remanded for further proceedings thereunder to conform to this decision. Costs to appellant.

MOFFAT, C. J., and WOLFE, and McDONOUGH, JJ., concur.

LARSON, Justice.

I concur, but deem it proper to point out a matter in the opinion with which I cannot concur.

Defendants demurred to the first count of the second amended complaint, both generally and specially. The trial court overruled the special demurrer and sustained the general demurrer. As pointed out by Mr. Justice PRATT in his opinion the first count is inconsistent and ambiguous. Then the opinion makes the same error as did the trial court. It sustains a general demurrer on the grounds of the special demurrer—ambiguity and uncertainty. The holding should be that the court erred in overruling the special demurrer and also in sustaining the general demurrer to the first count.